IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-00606-PSF-PAC

RAYMOND PETER MONTOYA,

      Applicant,

v.

H.A. RIOS, Warden,

      Respondent.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Patricia A. Coan, United States Magistrate Judge**

      Applicant [hereafter petitioner] Raymond Peter Montoya, a federal prisoner, filed an

Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2241 on April 1, 2005.  An

order of reference under 28 U.S.C. § 636(b) referred the Application to the undersigned

on April 21, 2005 to issue a Recommendation on disposition.  Petitioner filed a Motion for

Preliminary Injunction which was denied on April 13, 2005.   On May 17, 2005, respondent

filed an Answer to the Application, and petitioner filed his Traverse on June 10, 2005.  On

September 12, 2005, petitioner filed a Motion to Expedite or in the Alternative for

Preliminary Injunction.  That motion was referred to me on September 12, 2005.  The

Application is ripe for determination.

I.

      Petitioner is incarcerated at the Federal Prison Camp in Florence, Colorado, where

he is serving a twenty-five month sentence for bank fraud, followed by a five-year term of

supervised release.  Petitioner's projected release date, with good conduct time, is June 2, 2006.  (Attachment 4 to respondent's answer.)  Applicant claims in his petition that the Bureau of Prisons' (BOP) new rule regarding placement in a Community Corrections Center (CCC - better known a "halfway house"), codified at 28 C.F.R. ¶ 570.21(2005), violates the statute under which the rule was promulgated, and that the rule violates the U.S. Constitution's Due Process Clause as well as the prohibition of Ex Post Facto laws. Petitioner seeks an order from the court declaring the new rule invalid, and directing the Bureau of Prisons (BOP) to transfer him to a halfway house six months prior to the expiration of his sentence.

Respondent argues in his answer that the petition should be dismissed on the grounds of failure to exhaust administrative remedies, lack of standing, and because the BOP's rule and interpretation of the statute do not violate due process, impose prohibited ex post facto penalties, or otherwise impermissibly restrict relevant statutes.  For the reasons set forth below, I recommend that this petition be dismissed.

II.

To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3).  A *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Nonetheless, I can recommend dismissal of an application for habeas corpus where it appears from the face of the petition that the applicant is not entitled to relief. *See Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (discussing summary dismissal under Rule

2

4 of the Rules Governing Section 2254 Cases). I have previously entered recommendations on federal prisoners' challenges to the new BOP rule regarding CCC placement, most recently in *Hurley v. Sherrod*, no. 05-cv-01177-LTB-PAC. In that case, I issued a recommendation (adopted as an order of court by Chief Judge Babcock on September 21, 2005) to, among other things, uphold the BOP rule and to reject an attack of the rule on ex post facto grounds.

A. *Exhaustion*

Generally, a federal prisoner must exhaust his available administrative remedies before seeking habeas corpus relief under 28 U.S.C. §2241. *See Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (explaining that judicial intervention in habeas corpus proceedings is generally deferred until administrative remedies have been exhausted). The exhaustion requirement for federal prisoners under 28 U.S.C. §2241 is not jurisdictional, but is rather a judicially-fashioned rule enforced at the district court's discretion. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (the statutory exhaustion requirement simply codifies the administrative exhaustion doctrine in order to govern the timing of federal court decision-making); *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). The purpose of administrative exhaustion is to allow the agency an opportunity to remedy its own mistakes before being haled into court and it applies with particular force when the challenged action involves an exercise of the agency's discretionary power. *McCarthy*, 503 U.S. at 145.

Futility may excuse the exhaustion requirement if the agency does not have discretion to grant the requested remedy, or if the agency has predetermined the issue

3

before it. *Id.* at 148; *see also, Holman v. Booker*, 166 F.3d 347 (Table) at **3-4 (10th Cir. (Kan.) 1998) (unpublished)[1] (stating that exhaustion requirement in a §2241 proceeding may be excused as futile if petitioner can demonstrate that he was foreclosed from administrative relief because of a binding adverse administrative precedent).

Petitioner filed his §2241 Application without even submitting an administrative remedy request to the warden. (Respondent's Attachment 1). However, I decline to recommend dismissal of the Application for lack of exhaustion because Petitioner's resort to the administrative process would have been futile. *See Fagiolo v. Smith*, 326 F.Supp.2d 589, 590 (M.D.Pa. 2004)(concluding that "exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. §3624(c)").

*B. Lack of Standing to Sue*

Respondent argues that Petitioner lacks Article III standing to challenge his CCC placement date because he has not suffered an injury in fact that is concrete, particularized, actual and imminent. *See Horstkoetter v. Dep't of Public Safety*, 159 F.3d 1265, 1279 (10th Cir. 1998); *Committee to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996).

As an initial matter, Petitioner's claim is cognizable under 28 U.S.C. §2241 because he challenges the execution of his sentence. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Cohn v. Federal Bureau of Prisons*, 302 F.Supp.2d 267, 270 (S.D.N.Y. 2002) (holding that federal inmate's challenge to BOP's CCC placement policy was cognizable

---

[1] A copy of *Holman* is attached to the Recommendation. This unpublished decision is cited pursuant to 10th Cir. R. 36.3 to illustrate the futility of filing administrative appeals of the BOP Rule.

4

in §2241 proceeding); *Combs v. Attorney General*, 260 F.Supp.2d 53, 55-56 (D.D.C. 2003)(same); *Monahan v. Winn*, 276 F.Supp.2d 196, 204 (D.Mass. 2003)(same).

Moreover, if this court grants the requested relief, Petitioner will be entitled to consideration for CCC placement prior to March 2006. *See Loeffer v. Menifee*, 326 F.Supp.2d 454, 456 (S.D.N.Y. 2004)(concluding that habeas petitioner had standing to challenge the BOP's failure to consider him for CCC placement six months prior to his release date, in accordance with the BOP's discretionary statutory authority and established BOP policy). I recommend a finding that Petitioner has Article III standing to proceed with this action.

### C. Merits of the Application

Petitioner argues that the BOP's halfway house policy and the new regulation concerning it (28 C.F.R. § 570) are violative of due process and the statute under which the rule was enacted (18 U.S.C. § 3621). Petitioner claims that the statutory language, § 3621(b), authorizes the BOP to place inmates in a Community Corrections Center (CCC) at any time during the service of the prison sentence. In support of this argument, petitioner cites *Golding v. Winn*, 383 F.3d 17 (1st Cir. 2004) and *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004) for the proposition that the rule violates the statute in that the statute allows transfer to CCC anytime, and the rule restricts transfer to CCC to the last six months or ten percent of a sentence, whichever is shorter. Finally, petitioner argues that the rule is, in effect, a prohibited ex post facto law.

The BOP rule, effective February 14, 2005, provides that the BOP will "designate inmates to community confinement only as part of pre-release custody and programming,

during the last ten percent of the prison sentence being served, not to exceed six months."

28 C.F.R. §570.21.  The Bureau promulgated the new rule as a categorical exercise of its

discretion under 18 U.S.C. §3621(b) for designating inmates to community confinement,

in response to court decisions invalidating its prior CCC placement policy.[2]

There was a split of authority in the federal district courts about the validity of 28

C.F.R. §570.21.[3]  However, it is now evident that the majority of courts considering this

issue have concluded that the 2005 regulation is a permissible construction of the BOP's

discretionary authority under 18 U.S.C. §3621(b), pursuant to the Supreme Court's

decision in *Lopez v. Davis*, 531 U.S. 230, 242 (2001).  *See, e.g., Yip v. Federal Bureau of

Prisons*, 363 F.Supp.2d 548, 551-52 (E.D.N.Y. 2005); *Moss v. Apker*, 376 F.Supp.2d 416,

423-24 (S.D.N.Y. 2005); *Bialostok v. Apker*, No. 05 Civ. 2698, 2005 WL 1946480 (S.D.N.Y.

Aug. 12, 2005); *Wiesel v. Menifee*, No. 04 Civ. 9681, 2005 WL 1036297 (S.D.N.Y. May 2,

2005); *Levine v. Apker*, No. 05 Civ. 3472, 2005 WL 1417134 (S.D.N.Y. May 20, 2005);

*Levine v. Menifee*, No. 05 Civ.1902, 2005 WL 1384021 (S.D.N.Y. June 9, 2005); *Troy v.

Apker*, No. 05 Civ. 1306, 2005 WL 1661101 (S.D.N.Y. June 30, 2005); *DeFrancesco v.

Federal Bureau of Prisons*, No. 05 Civ.1780, 2005 WL 1712020 (D.N.J. July 20, 2005);

*Jackson v. Federal Bureau of Prisons*, No. 05 Civ. 2339, 2005 WL 1705775 (D.N.J. July

20, 2005); *Woodall v. Federal Bureau of Prisons*, No. 05 Civ. 1542, 2005 WL 1705777

---

[2]The prior CCC placement policy was derived from the BOP's December 13, 2002 Office of Legal Counsel Memorandum, (69 Fed. Reg. 51,213; 70 Fed. Reg. 1659; 28 C.F.R. §570.20) and was invalidated by several courts.

[3]I note that the 2005 regulation was promulgated in compliance with the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. §533.  *See* Proposed Rule, 69 Fed. Reg. at 51, 213 (giving notice of and requesting comments on the proposed rule); Final Rule, 70 Fed. Reg. at 1659 (responding to comments on proposed rule and adopting final rule).

(D.N.J. July 20, 2005); *Gentzler v. United States*, No. 05 Civ. 4521, 2005 WL 1773684 (S.D.N.Y. July 27, 2005); *Lee v. United States*, No. 04 Civ. 0610, 2005 WL 2179796 (S.D.Ala. Sept. 6, 2005); *Charboneau v. Menifee*, No. 05 Civ. 2698, 2005 WL 2385862 (S.D.N.Y. Sept. 28, 2005).

A small group of other courts have declared 28 C.F.R. §570.21 to be invalid because the regulation disregards the factors set forth in 18 U.S.C. §3621(b) and thus suffers from the same infirmities as the December 2002 policy. *See U.S. v. Paige*, 369 F.Supp., 1257 1262-63 (D.Mont. 2005); *Pimentel v. Gonzales*, 367 F.Supp. 365, 375-76 (E.D.N.Y. 2005); *Drew v. Menifee*, No. 04 Civ. 9944, 2005 WL 525449 at *4 (S.D.N.Y. Mar. 4, 2005); and *Cook v. Gonzales*, No. 05 Civ. 09, 2005 WL 773956 at *4 (D.Or. Apr. 5, 2005). I agree with those courts that have concluded that, under a straightforward application of the U.S. Supreme Court decision in *Lopez v. Davis*, 531 U.S. 230 (2001), the 2005 regulation is a reasonable and permissible construction of the BOP's discretionary authority under 18 U.S.C. §3621(b).

In *Lopez*, the Supreme Court addressed the validity of the BOP's regulation implementing 18 U.S.C. §3621(e)(2)(B). Section 3621(e)(2)(B) confers discretionary authority on the BOP to reduce by up to one year the prison term of an inmate convicted of a nonviolent felony, if the inmate successfully completed a substance abuse program. The regulation, 28 C.F.R. §550.58(a)(1)(vi)(B), categorically denies early release to prisoners whose current offense is a felony attended by "the carrying, possession, or use of a firearm." Thus, while the statute categorically denies early release eligibility to offenders convicted of violent offenses, the BOP adopted an additional category of

7

ineligible inmates - those whose current offense is a felony involving a firearm.   The Supreme Court held that the BOP's implementing regulation was a permissible exercise of the Bureau's discretion under 18 U.S.C. §3621(e)(2)(B).

The *Lopez* Court determined that because the statute did not prescribe the conditions under which the BOP's authority to grant early release to nonviolent offenders should be exercised, *id.* at 241, the Bureau need only to have "filled the statutory gap `in a way that is reasonable in light of the legislature's revealed design.'" *Id.* at 242 (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). The Court concluded that the agency acted reasonably in determining that possession of a firearm in connection with a felony suggests a readiness to endanger another's life and in categorically excluding those inmates from early release eligibility.  *Id.* at 244.


The Supreme Court rejected the petitioner's contention that the BOP may not make categorical exclusions, but must rely only on  individualized assessments.   *Id.* at 243. "[E]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority."  *Id.*  at 244 (quoting *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991)). Nothing in Section 3621(e)(2)(B) restricts the BOP's authority to exercise its discretion through rule making. The Supreme Court thus held that the BOP may categorically exclude prisoners from early release based on their preconviction conduct.  *Id.*

Like the regulation at issue in *Lopez*, 28 C.F.R. §570.21 represents a categorical

exercise of the Bureau's statutory discretion. The BOP "has identified a category of prisoners – inmates who are not yet required to be considered for transfer to a CCC under Section 3624(c),[4] but are eligible under Section 3621(b) – and created a rule denying transfers to all of them." *Yip,* 363 F.Supp.2d at 552.  Under *Lopez,* the regulation is valid if it is a reasonable interpretation of §3621(b) and Congress did not clearly express an intent to withhold the BOP's authority to regulate its discretion under §3621(b) through adoption of a categorical rule.

I recommend a finding that the BOP's interpretation of 18 U.S.C. §3621(b) is reasonable. The statute does not require the BOP to place an inmate in a CCC at any time.  Instead, the statute confers discretion on the BOP to designate an inmate's place of imprisonment and sets forth five factors for consideration in making such determinations.  The BOP has stated that the agency considered each of the five statutory factors in drafting the regulation.  *See* Proposed Rule, 69 Fed. Reg. 51, 214. ("In deciding to limit inmates' community confinement to the last ten percent of the prison sentence, not to exceed six months, the Bureau has carefully considered all of the statutorily-specified factors, as well as the additional considerations that it identified as pertinent.")  Moreover, the BOP will continue to consider the five statutory factors when designating or transferring

---

[4]18 U.S.C. §3621(c) entitled "Pre-release custody," provides, in relevant part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

inmates to correctional facilities. *See* Final Rule, 70 Fed. Reg. at 1660. ("The Bureau will continue to evaluate [the factors set forth in Section 3621(b)] when making individual designations to appropriate Bureau facilities, and this rule will not adversely effect such individualized determinations.")

Those courts which have struck down the 2005 regulation for failing to consider all five of the factors in §3621(b) have ignored the BOP's express statements to the contrary in the rule making process.   This court finds no reason to disregard the BOP's representations that all the statutory factors were considered in promulgating the rule. Although the proposed rule substantively discusses only two of the statutory factors – facility resources and policy statements issued by the Sentencing Commission – and addresses additional factors such as avoiding favoritism, nothing in the statute dictates the weight the agency must accord each factor, or prevents the Bureau from considering other relevant factors. *See* S.Rep. 98-225, 1984 U.S.C.C.A.N. 3182, 3325 ("The Committee, by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, does not intend to restrict or limit the Bureau in the exercise of its existing discretion . . .").  Indeed, the statute specifically prohibits the BOP from favoring prisoners of high social or economic status in designating an inmate's place of imprisonment or in making transfers.  18 U.S.C. §3621(b).

The next question under *Lopez* is whether the BOP's categorical denial of CCC placement to all federal prisoners prior to the last ten percent of their sentences, not to exceed six months, conflicts with any Congressional directive.  *See Lopez*, 531 U.S. at 244.  Nothing in §3621(b) prohibits the Bureau from regulating its statutory discretion

10

through the promulgation of categorical rules. Accordingly, I recommend a finding that 28 C.F.R. §570.21 is a reasonable and permissible construction of the BOP's discretionary authority to designate the place of a prisoner's imprisonment under 18 U.S.C. §3621(b), and conclude that the Rule is appropriate. I recommend dismissal of Mr. Montoya's Application on this ground.

### 1. Due Process

Petitioner maintains that the BOP rule deprives him of due process. Although the 2005 Policy certainly disfavors petitioner in terms of CCC placement dates, that alone does not--and indeed, cannot--give rise to a due process violation because no protected interest has been infringed upon. In this respect, *Meachum v. Fano*, 427 U.S. 215 (1976) is directly on point. In *Meachum*, state prisoners alleged that they were deprived of liberty without due process when they were transferred to a less favorable penal institution. The Supreme Court disagreed, holding that "the Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system." 427 U.S. at 225. Petitioner cannot establish a substantive due process claim under the Fifth Amendment because substantive due process only attaches when a fundamental right is at stake. *See Rochin v. California*, 342 U.S. 165, 172- 73 (1952); *Planned Parenthood v. Casey*, 505 U.S. 833, 846-48 (1992). Preferred placement in a CCC or halfway house does not rise to the level of a fundamental right. *See Smith v. United States*, 277 F.Supp.2d 100, 110 (D.D.C.2003). Montoya does not contend that he has been subject to any extraordinary treatment that would constitute "atypical and significant hardship" at prison. Therefore, this Court finds that Petitioner's custodial

11

placement in a CCC is a day-to-day prison management issue, subject to the BOP's administrative discretion under 18 U.S.C. § 3621(b) as interpreted by the new rule (28 C.F.R. § 570.21), and limited only to the extent mandated by 18 U.S.C. § 3624(c) with respect to transitional placement. Such custodial status does not constitute an atypical or significant hardship on him in relation to the ordinary incidents of prison life. See *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Moreover, I conclude that the mere fact that the BOP has the authority to consider an inmate for a CCC transfer does not confer on the inmate a right to that consideration before his ten percent date under 18 U.S.C. § 3624(c). See *Yip*, 363 F.Supp.2d at 551-52; *Moss*, 2005 WL 1593016 at *8. Petitioner fails to state any liberty interest in CCC placement, and therefore, because no liberty interest is at stake, he fails to state a denial of due process claim.

### 2. Prohibition of Ex Post Facto Laws

Petitioner suggests that application of the 2005 regulation to him violates the Ex Post Facto Clause of the United States Constitution. *See* Petitioner's Memorandum is Support of Application, filed April 1, 2005 at 9-10. The Ex Post Facto Clause, U.S. CONSTITUTION, art. I, §10, cl. 1, prohibits the retroactive application of a law that alters the definition of criminal conduct or increases the punishment for the crime. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citation omitted) (holding that retroactive change in legislation that effectively postponed date when prisoner became eligible for early release ran afoul of ex post facto prohibition); *California Dep't of Corrections v. Morales,* 514 U.S. 499, 509 (1995) (holding that California statute which authorized the Board of Prison Terms to defer

for up to three years parole suitability hearings for multiple murderers did not violate the Ex Post Facto Clause because the law "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes.")  The 2005 Regulation does not alter the definition of Petitioner's crime; thus, the issue is whether application of the new regulation to Petitioner would effectively increase the punishment for his crime.

The Ex Post Facto Clause does not "require that [a criminal] sentence be carried out under the identical legal regime that previously prevailed." *Morales*, 514 U.S. at 510 n.6.  The new regulation does not affect the length of Petitioner's confinement.  There is no evidence that designation to a CCC no earlier than the last ten percent of his sentence will impact Mr. Montoya's release date.  Moreover, the purpose of the new regulation is not punitive. The BOP's stated intent was to exercise its discretion to designate inmates to community confinement in a manner that minimized the risk of disparate treatment, preserved CCC resources and was consistent with the Sentencing Commission's policies on CCCs.  *See* 70 Fed. Reg. 1659 (January 10, 2005).

I recommend a finding that 28 C.F.R. §570.21 does not violate the Ex Post Facto Clause because the regulation is a mere change in the "legal regime" under which Petitioner is serving his sentence rather than an increase in punishment for Montoya's offense.  *See Moss*, 376 F.Supp.2d at 425 (holding that 28 C.F.R. §570.21 does not violate the Ex Post Facto Clause because regulation serves a regulatory purpose, rather than a purpose of increasing the punishment associated with individual crimes); *see also*, *Lee v. Governor of State of New York*, 87 F.3d 55 (2d Cir. 1996) (applying *Morales* and

13

holding that state statute that removed correctional services commissioner's discretionary authority to allow certain classes of prisoners to participate in temporary release programs was not an ex post facto law because statute did not increase prisoner's punishment, but merely effected a change in the legal regime); *Dominique v. Weld*, 73 F.3d 1156, 1165 (1st Cir. 1996) (finding no ex post facto violation where prisoner was removed from the state's temporary release program due to new eligibility requirements because "the change in the conditions determining the nature of his confinement while serving his sentence was an allowed alteration in the prevailing `legal regime' rather than an `increased penalty' for ex post facto purposes"); *but cf. In re Medley*, 134 U.S. 160 (1890) (holding that retroactive application of a statute requiring solitary confinement for a capital offender prior to execution violated the Ex Post Facto Clause).[5]  I conclude that dismissal of this petition is also appropriate because of petitioner's failure to substantiate his ex post facto claim.

III.

The §2241 Application should be denied because 28 C.F.R. §570.21, which is a lawful categorical exercise of the BOP's discretion under 18 U.S.C. §3621(b), bars Mr. Montoya's request for CCC placement prior to the last ten percent of his sentence.  His claims that the BOP rule offends the Due Process Clause and the prohibition against ex post facto laws are properly dismissed.

[5]I note that *In re Medley* was decided under former Supreme Court jurisprudence which held that an ex post facto violation may arise when a new law "alters the situation of the accused to his disadvantage." *In re Medley*, 134 U.S. at 171 (citing cases).  However, in *Collins v. Youngblood*, 497 U.S. 37, 43, 50 (1990), the Supreme Court clarified that a change that "alters the situation of a party to his disadvantage" does not violate the Ex Post Facto Clause unless it also modifies the definition of a crime or increases the punishment for criminal acts.  Accordingly, *In re Medley* has questionable, if any, precedential value.

For the reasons stated, it is hereby

**RECOMMENDED** that petitioner's Application for Habeas Corpus Relief be

**DISMISSED WITH PREJUDICE**.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district court judge shall make a determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated this 26th day of October, 2005.

BY THE COURT:

 s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge

15